ALYAS v GILLARD

SALMO v SMITH

Docket Nos. 108575, 110052. Submitted August 2, 1989, at Lansing. Decided September 6, 1989. Leave to appeal applied for.

Assam Salmo, also known as Assam B. Najim, was injured in an automobile accident and Manhal J. Alyas was killed. Assam Salmo and Wisam Salmo then brought an action in the Oakland Circuit Court against Arnold D. Smith, Muslih Habbo, Masoud Habbo, and John Gillard, Jr., doing business as Eddie's Bar. Included was a dramshop action against the bar, which allegedly had served the driver of the other car involved in the accident. Hala Alyas, personal representative of the estate of Manhal J. Alyas, deceased, also brought a dramshop action in the Oakland Circuit Court against John Gillard, Jr., doing business as Eddie's Bar. The bar was insured under two separate insurance policies. The primary insurer was Union Indemnity Insurance Company of New York and the excess liability insurer was Illinois Employers Insurance of Wausau. After the complaints were filed, Union Indemnity went into receivership. Pursuant to statute, the Michigan Property and Casualty Guarantee Association (MPCGA) inherited the duty to defend the insured and, also pursuant to statute, designated Citizens Insurance Company of America as the servicing facility to handle all claims made against the insureds of Union Indemnity. In response to a default judgment filed by Salmo against the bar, Gillard retained an attorney. Notice of the claims was given to Wausau, Union Indemnity and MPCGA. Union Indemnity and MPCGA refused to defend despite this notice. Gillard's counsel then entered into settlement negotiations with the plaintiffs and a consent judgment was entered against the bar in each case in the amount of $150,000. Plaintiffs then filed writs of garnishment against the insurers. Wausau, Citizens Insurance and MPCGA, as garnishee defendants, filed motions for summary

REFERENCES

Am Jur 2d, Attachment and Garnishment § 337; Insurance §§ 88 et seq., 1395-1404, 1405 et seq.; Summary Judgment § 27.

See the Index to Annotations under Bankruptcy and Insolvency; Insurance and Insurance Companies.

disposition which were granted by the trial courts, David F. Breck, J., in the Salmo action, and Robert L. Templin, J., in the Alyas action. Assam Salmo appealed, Docket No. 110052. Hala Alyas appealed, Docket No. 108575. The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. Both MPCGA and Wausau were given the opportunity to exert whatever rights they had under their policies before the settlement was entered. They declined to exercise those rights. The fact that they did not consent to the settlement does not automatically mean that they are excused from liability under the "no action" clauses in the policies which provide that the insured may not bring an action against the insurer unless the insurer's obligation to pay has been finally determined by a written agreement of the insured, the claimant and the insurance company. Summary disposition as to MPCGA and Wausau was not appropriate in the Alyas action.

2. Summary disposition was also not appropriate in the Alyas action under the terms of the settlement agreement. The language of the consent judgment does not release Gillard or the bar. The issues whether the bar acted in bad faith in entering into the consent judgment as well as the question of the insured's bad faith in failing to act prior to the settlement are questions of fact to be resolved below.

3. For the same reasons as applied in the Alyas action, the insurers were not excused from liability in the Salmo case because of the failure to consent pursuant to the "no action" clauses in the policies.

4. The writs of garnishment were not defective. Service of the writ on Citizens was sufficient in this case to accomplish service upon MPCGA. The fact that Citizens, as the servicing facility, may not be personally liable, does not mean that it is not a proper party in its role as a servicing facility.

Reversed.

1. INSURANCE — MICHIGAN PROPERTY AND CASUALTY GUARANTEE ASSOCIATION — INSOLVENT INSURERS.

The Michigan Property and Casualty Guarantee Association protects insureds and persons with claims against insureds from potential catastrophic loss in the event of an insurer's insolvency; the MPCGA generally has the same rights, obligations and liabilities as the insolvent insurer with regard to claims made by an injured party (MCL 500.7931[2]; MSA 24.17931[2]).

2. INSURANCE — SETTLEMENT — DUTY TO DEFEND.

An insurer which breaches its own policy of insurance by refus-

ing to fulfil its duty to defend the insured is bound by any reasonable settlement entered into in good faith between the insured and an injured third party.

3. INSURANCE — SETTLEMENT — CONSENT.

An insured is released from any agreement not to settle without the insurer's consent where the insurer has denied liability and wrongfully refused to defend a claim against the insured.

4. MOTIONS AND ORDERS — SUMMARY DISPOSITION — ISSUES OF MATERIAL FACT.

Summary disposition is properly granted on the ground that there is no genuine issue of material fact where the trial court is satisfied that it is impossible for plaintiffs to support their claims because of some deficiency in the record which cannot be overcome; summary disposition is not appropriate where there are genuine questions of material fact remaining to be resolved (MCR 2.116[C][10]).

5. INSURANCE — MICHIGAN PROPERTY AND CASUALTY GUARANTEE ASSOCIATION — INSOLVENT INSURERS.

The Michigan Property and Casualty Guarantee Association may designate a member insurer as a servicing facility to handle claims against an insolvent insurer; the servicing facility performs its functions on behalf of and in the name of the association (MCL 500.7916; MSA 24.17916).

6. PARTIES — INSURANCE — MICHIGAN PROPERTY AND CASUALTY GUARANTEE ASSOCIATION — INSOLVENT INSURERS — SERVICING FACILITY.

The Michigan Property and Casualty Guarantee Association may be sued in its own name or through the servicing facility designated by the association to handle claims against insolvent insurers; the fact that the servicing facility may not be personally liable on a claim against an insolvent insurer does not mean that it is not a proper party in an action against the insolvent insurer in its role as the servicing facility (MCL 500.7918[2]; MSA 24.17918[2]).

7. GARNISHMENT — WRITS OF GARNISHMENT.

A writ of garnishment must include sufficient information to permit the garnishee defendant to identify the principal defendant (MCR 3.101[E]).

*Frank R. Langton & Associates, P.C.* (by *Jerry L. Watson*), for Assam Salmo.

*John J. Grech & Associates, P.C.* (by *Kenneth A. Skuzenski*), for Hala Alyas.

*Kallas, Lower, Henk & Treado, P.C.* (by *Howard C. Treado*), for Citizens Insurance Company of America and Michigan Property & Casualty Guaranty Association.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Michael F. Schmidt* and *Maurice A. Borden*), for Illinois Employers Insurance of Wausau.

Before: HOOD, P.J., and CAVANAGH and J. W. FITZGERALD,* JJ.

PER CURIAM. Plaintiffs appeal as of right from various opinions and orders of Oakland Circuit Court Judges Robert L. Templin and David F. Breck which granted summary disposition in favor of the appellees. We reverse.

These cases have been consolidated on appeal. They arose out of a car accident in which plaintiff Assam Salmo was injured and plaintiff Alyas's decedent, Manhal Alyas, was killed. Both plaintiffs brought dramshop actions against Eddie's Bar, which allegedly had served the driver of the other car involved in the accident.

At the time of the accident, defendant John Gillard, doing business as Eddie's Bar, was insured under two separate policies of insurance. His primary insurer was defendant Union Indemnity Insurance Company of New York. That policy provided a coverage limit of $25,000. His excess liability policy, with a limit of $275,000, was with defendant Illinois Employers Insurance of Wausau. After the complaints were filed, Union Indemnity went into receivership. Union Indemnity came

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment.

within the provisions of MCL 500.7901 *et seq.*; MSA 24.17901 *et seq.*, and, therefore, defendant Michigan Property and Casualty Guarantee Association (MPCGA) inherited the duty to defend the insured. Under the statute, MPCGA handles claims against insolvent insurers. Pursuant to the statute, MPCGA designated defendant Citizens Insurance Company of America as the servicing facility to handle all claims made against the insureds of Union Indemnity.[1]

Apparently in response to a default judgment filed by plaintiff Salmo against Eddie's Bar, John Gillard retained an attorney to represent the bar. According to an affidavit filed below by that attorney, notice of the claims was given to Wausau, Union Indemnity and MPCGA. Union Indemnity and MPCGA refused to defend despite this notice. Counsel then entered into settlement negotiations with plaintiffs and a consent judgment was entered against the bar in each case in the amount of $150,000. Plaintiffs then filed writs of garnishment against the insurers. Wausau, Citizens Insurance and MPCGA subsequently filed motions for summary disposition which were granted by the trial courts.

Apparently all the motions for summary disposition were brought and granted under MCR 2.116(C)(10). Under this rule, the court must be satisfied that it is impossible for plaintiffs to support their claims because of some deficiency in the record which cannot be overcome. The reviewing court should be liberal in finding that a genuine issue of material fact exists. *W B Cenac Medical Service, PC v Michigan Physicians Mutual Liabil-*

---

[1] In its opinion, the trial court in the Salmo case noted that there were no allegations that Citizens was the servicing facility for Union Indemnity. However, in its brief on appeal, Citizens specifically states it was so designated by MPCGA. For purposes of this review, we accept that statement as true.

*ity Co,* 174 Mich App 676, 681; 436 NW2d 430 (1989).

The parties have raised a number of issues on appeal. We have limited this review, however, to those issues actually decided by the trial courts in granting summary disposition. *Michigan Mutual Ins Co v American Community Mutual Ins Co,* 165 Mich App 269, 277; 418 NW2d 455 (1987).

We begin by reviewing the issues raised in the Alyas case. In this case before Judge Templin, summary disposition was granted as to MPCGA for two reasons: (1) plaintiff had not complied with a policy provision requiring that the insured consent to any settlement agreement; and (2) the consent judgment released the bar from personal liability and therefore the insurer could not be liable. As to Citizens, the court ruled that the release of the bar also relieved Citizens of liability. The claim against Wausau was dismissed for the same two reasons applied for MPCGA. The court also mentioned a provision in Wausau's policy requiring that any action against Wausau be brought within twelve months of the commencement of the insured's obligation to pay. While the opinion does not specifically rely on this provision, Wausau has argued its applicability on appeal.

As an initial consideration, we note that MPCGA is involved because of the insolvency of the bar's insurer. The MPCGA protects insureds and persons with claims against insureds from potential catastrophic loss in the event of an insurer's insolvency. *Young v Shull,* 149 Mich App 367, 373; 385 NW2d 789 (1986). Generally, MPCGA has the same rights, obligations and liabilities as the insolvent insurer with regard to claims made by an injured party. MCL 500.7931(2); MSA 24.17931(2); *Felsner v McDonald Rent-A-Car, Inc,* 173 Mich App 518, 521; 434 NW2d 178 (1988). For purposes of this

appeal, MPCGA's duties and responsibilities are the same as those that would have been imposed under Union Indemnity's policy.

Both Union Indemnity's and Wausau's policies contained similar "no action" clauses. These provide in relevant part that the insured may not bring an action against the insurer unless the insurer's obligation to pay has been finally determined by a written agreement of the insured, the claimant and the insurance company. MPCGA and Wausau argue that under this provision, since they did not consent to the settlement agreement, they cannot be bound by it.

Clauses prohibiting the insured from voluntarily settling a claim without the insurer's consent give the insurer the opportunity to contest liability, to participate in settlement negotiations and to have input as to the value of the claim. *Coil Anodizers, Inc v Wolverine Ins Co*, 120 Mich App 118, 123-124; 327 NW2d 416 (1982); *Giffels v The Home Ins Co*, 19 Mich App 146, 151-153; 172 NW2d 540 (1969). When an insurer breaches its own policy of insurance by refusing to fulfil its duty to defend the insured, the insurer is bound by any reasonable settlement entered into in good faith between the insured and the third party. *The Detroit Edison Co v Michigan Mutual Ins Co*, 102 Mich App 136, 144; 301 NW2d 832 (1980). An insured is released from any agreement not to settle without the insurer's consent where the insurer has denied liability and wrongfully refused to defend. *Giffels, supra*, p 153. Upon notice, there is some burden on the insurer to act to protect its interests or those of its insured. The insurance carrier will not be permitted to benefit by sitting idly by, knowing of the litigation, and watching its insured become prejudiced. *Burgess v American Fidelity Fire Ins Co*, 107 Mich App 625, 630; 310 NW2d 23 (1981).

At the time of the motion, there were indications that both MPCGA and Wausau had been informed of the claims against the insured and that they refused to take any part in the proceedings. This is not a case like *Coil Anodizers, supra,* or *MacDonald v State Farm Mutual Automobile Ins Co,* 14 Mich App 408; 165 NW2d 665 (1968), where the settlement could be construed as a voluntary action on the part of the insured. Here, suits had been filed against the insured and a default judgment had been requested in at least one case. Negotiations were conducted and a consent judgment was entered. Both MPCGA and Wausau were given the opportunity to exert whatever rights they had under their policies before the settlement was entered. They declined to exercise those rights. That they did not consent to the settlement does not automatically mean that they are excused from liability. Therefore, summary disposition as to MPCGA and Wausau was not appropriate on this record.

Nor was it appropriate under the terms of the settlement agreement. The Alyas consent judgment provided that judgment be entered against Eddie's Bar in the amount of $150,000. It went on to provide that the judgment was to be satisfied solely from the proceeds of any liability insurance available to the bar and that Eddie's Bar and Gillard were relieved "from any and all liability." The trial court found that the insurers' duty to pay was contingent on the insured's becoming legally obligated to pay damages. Therefore, the court reasoned, since the consent judgment released the insured from liability, all three of the insurers were also released.

There is no claim that the consent judgment is not valid or binding as to plaintiff, Alyas John Gillard and the bar. At the time the judgment was

entered, the bar was involved in actual litigation and was facing liability. The language of the judgment does not release Gillard or the bar. It specifically provides that the bar is liable in the amount of $150,000. The agreement limits the assets that plaintiff may pursue. If the insurers are liable to their insured up to the amount agreed upon, then plaintiff has agreed to seek satisfaction from the insurers.

This is not like the case cited by Wausau, where the insurer provided assistance throughout the trial and the insured then entered into an agreement with the other defendants as to what the insured's liability was. See *Sargent v Johnson,* 551 F2d 221 (CA 8, 1977). If the issue here is whether the bar acted in bad faith, that question, as is the question of the insured's bad faith in failing to act prior to the settlement, is a question of fact to be resolved below. Summary disposition was not appropriate on this issue.

The remaining reason for granting summary disposition in the Alyas case applies only to Wausau and concerns the policy limitation period for an action against Wausau. The trial court mentions this provision in its opinion from the bench, but does not clearly rely on it in granting Wausau's motion. The issue was not briefed by plaintiff Alyas. Rather than assume that this limitation period applies on these facts, we decline to address this issue.

We now turn to plaintiff Salmo's appeal. In the Salmo case before Judge Breck, the claims against both Citizens and MPCGA were dismissed because they were not proper parties primarily on the basis of defects in the writs of garnishment. The court also noted that, even if they were proper parties, the parties were excused from liability because the bar did not obtain their consent to the

settlement. The claim against Wausau was also dismissed because it had not consented to the settlement.

The consent judgment in this case provided that plaintiff Assam Salmo was to recover $150,000 "against Defendant, John Gillard, Jr. d/b/a Eddie's Bar." In separate paragraphs, it then provided that satisfaction was to be obtained from defendant's insurer or the Michigan state fund and that defendant was released "from any personal liability arising out of this lawsuit that is not satisfied by Defendant's insurer." The same "no action" clauses discussed above are pertinent here. For the reasons stated above, we reject the failure-to-consent argument as applied to all three defendants.

The remaining issue concerns the alleged defects in the writs of garnishment.

The writ of garnishment apparently served upon MPCGA identified the garnishee defendant as "Union Indemnity c/o Michigan Property & Casualty Guaranty Assoc." The writ served on Citizens identified the garnishee defendant as "Citizens Insurance Company of America as Assignee of Union Indemnity Ins. Co. of New York via Assignment by M.P.C.G.A."

We find that the second writ was sufficient as to both Citizens and MPCGA. The MPCGA may designate a member as a servicing facility. MCL 500.7916; MSA 24.17916. The servicing facility performs its functions on behalf of and in the name of MPCGA. *Id.* The MPCGA may be sued in its own name or through the servicing facility. MCL 500.7918(2); MSA 24.17918(2). Service of the writ on Citizens, therefore, was sufficient to accomplish service on MPCGA. That Citizens, as the servicing facility, may not be personally liable, does not mean that it is not a proper party in its role as a

servicing facility. The court rules, MCR 3.101(E), require the writ of garnishment to include sufficient information to permit the garnishee defendant to identify the principal defendant. While the terms "assignee" and "assignment" may not be technically correct, we believe they served in this instance to identify the basis for plaintiff's belief that MPCGA was a proper garnishee defendant. Since it is not clear whether Citizens would continue to serve as the serving facility for the garnishment action, it was premature for the trial court to dismiss it as a party.

As to both cases, therefore, the orders granting summary disposition are reversed.

Reversed.